UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

MARIA CONCETTA CANNIZZARO,
formerly known as MARIA C. MENZA,

         Plaintiff,     DECISION AND ORDER

    -vs-            19-CV-690

ANDREW SAUL,
Commissioner of Social Security,

         Defendant.

───────────────────────────────

## INTRODUCTION

Plaintiff Maria Concetta Cannizzaro, formerly known as Maria C. Menza ("Plaintiff"), brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act. Pursuant to 28 U.S.C. § 636(c) the parties have consented to the disposition of this case by a United States magistrate judge. (Consent to Proceed, ECF No. 11.)

Presently before the Court are cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (ECF Nos. 7 & 9.) For the reasons stated below, this matter must be remanded for a rehearing.

## PROCEDURAL BACKGROUND

On May 5, 2015, Plaintiff protectively filed for DIB, alleging disability beginning on August 31, 2011. (R.[1] 161.) Plaintiff later amended her claim to a closed period of benefits beginning February 13, 2014, and ending May 6, 2016. (R. 176.) The Social Security Administration initially denied Plaintiff's claim. (R. 92–103.) On January 25, 2018, an Administrative Law Judge ("A.L.J.") located in Falls Church, Virginia held a hearing in this matter. (R. 30–32.) Plaintiff appeared via videoconference in Buffalo, New York for the hearing and was represented by counsel. (R. 32.) A vocational expert testified at the hearing via telephone. (R. 30–33.)

The A.L.J. issued a decision on June 1, 2018, finding that Plaintiff had the following severe impairments: "degenerative disc disease, arthritis, obesity, affective disorder, and posttraumatic stress disorder." (R. 17.) Nevertheless, the A.L.J. determined that Plaintiff was able to

> perform medium work as defined in 20 CFR 404.1567(c) except the claimant can occasionally balance, stoop, knee, crouch, and crawl. The claimant can occasionally climb ramps or stairs but cannot climb ladders, ropes, or scaffolds. The claimant cannot work in hazardous environments such as at unprotected heights or around dangerous machinery and open flames. The claimant is limited to a low stress job, defined as making only occasional decisions and tolerating only occasional changes in work setting. The claimant can have occasional contact with supervisors, coworkers, and the public with respect to performing work-related duties.

---

[1] "R __" refers to the page in the Administrative Record filed by the Commissioner of Social Security. (ECF No. 5.)

(R. 20.)

Plaintiff appealed to the Social Security Administration's Appeals Council and that body denied her request for review on March 29, 2019, making the A.L.J.'s decision the Commissioner's final decision. (R. 1–5.) Plaintiff filed this lawsuit on May 28, 2019. (Compl., ECF No. 1.)

## STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). It directs that when considering a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); see also *Metro. Stevedore Co. v. Rambo*, 521 U.S. 121, 149 (1997).

To determine whether substantial evidence supports the Commissioner's findings, the Court must "examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v.*

3

*Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curium)). Section 405(g) limits the scope of the Court's review to two inquiries: whether the Commissioner's findings were supported by substantial evidence in the record, and whether the Commissioner's conclusions are based upon an erroneous legal standard. *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003); see also *Mongeur*, 722 F.2d at 1038 (finding a reviewing court does not try a benefits case *de novo*).

A person is disabled for the purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. See *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1)    whether the claimant is currently engaged in substantial gainful activity;

(2)    if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3)    if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;

(4)    if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform his past work; and

(5)    if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004) (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## ANALYSIS

Plaintiff raises one issue for the Court's review, asserting that the A.L.J.'s residual functional capacity ("RFC") determination was erroneous and warrants remand because it was based upon the A.L.J.'s lay opinion and therefore not supported by substantial evidence. (Pl.'s Mem. of Law at 1, ECF No. 7-1.) As part of this argument, Plaintiff asserts that the A.L.J. should have requested treatment records from Lisa A. Murawski, LMHC, a mental health counselor, instead of rejecting her opinions on the basis that there were no treatment notes from Ms. Murawski in the record. (*Id.* at 13.) Plaintiff further contends that "the record is clear" that the A.L.J. did not attempt to contact Ms. Murawski for her treatment notes to satisfy the A.L.J.'s duty to develop the record. (*Id.*)

### *Substantial evidence did not support the A.L.J.'s RFC because the A.L.J. failed to fulfill his duty to develop the record.*

In determining Plaintiff's RFC the A.L.J. considered a statement and a

"Mental Impairment Questionnaire" ("mental health assessment") from Ms. Murawski who treated Plaintiff beginning in February 2014 until September 2015. (R. 427.)[2] Under the section titled "Opinion Evidence" in the decision, the A.L.J. considered two "opinions"[3] provided by Ms. Murawski, dated May 20, 2015 (R. 329) and November 8, 2017. (R. 421–27.) The A.L.J. assigned Ms. Murawski's 2015 opinion "little weight" because she "did not provide medical records or other relevant support" to aid the A.L.J. in determining the persuasiveness of her opinion. (R. 22.) The A.L.J. similarly gave "little weight" to Ms. Murawski's mental health assessment completed in 2017, based, in part, on the lack of treatment notes to support Ms. Murawski's findings. (R. 23.)

Even when a claimant is represented by counsel, it is the well-established rule in the Second Circuit "that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants ... affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Lamay v. Comm'r of Soc. Sec.,* 562 F.3d 503, 508–09 (2d Cir. 2009) (internal quotation marks and brackets omitted); *accord Butts v. Barnhart,* 388

---

[2] The record provided by Ms. Murawski regarding Plaintiff's dates of service indicates that Plaintiff began treating with Ms. Murawski on February 13, 2014, with a last date of service listed as January 8, 2016. (R. 427.) However, it does not appear that Plaintiff attended her last two sessions with Ms. Murawski as Plaintiff cancelled her appointment on October 12, 2015, and failed to show up for her appointment scheduled for January 8, 2016. (*Id.*)

[3] The A.L.J. refers to Ms. Murawski's 2015 statement and 2017 mental health assessment as "opinions." (R. 22–23.) However, as pointed out by the Commissioner, since Ms. Murawski is not an acceptable medical source, her "statements . . . are not medical opinions," citing to 20 C.F.R. § 404.1527(d)(1). (Comm'r Mem. of Law at 17, ECF No. 9-1.); *Jennifer W. v. Comm'r of Soc. Sec.*, No. 5:19-CV-37, 2020 WL 549357, *10 (D. Vt. Feb. 4, 2020) ("under the applicable regulations, only "acceptable medical sources" can give "medical opinions," citing to 20 C.F.R. § 416.927(a)(1)).

F.3d 377, 386 (2d Cir. 2004), *reh'g granted in part and denied in part,* 416 F.3d 101 (2d Cir. 2005); *Pratts v. Chater,* 94 F.3d 34, 37 (2d Cir. 1996); *see also Gold v. Sec'y of Health, Educ. & Welfare,* 463 F.2d 38, 43 (2d Cir. 1972) (*pro se* claimant). Social Security disability determinations are "investigatory, or inquisitorial, rather than adversarial." *Butts,* 388 F.3d at 386 (internal quotation marks omitted). "[I]t is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Id.* (internal quotation marks omitted); *accord Tejada v. Apfel,* 167 F.3d 770, 774 (2d Cir. 1999). Indeed, "the ALJ's duty to develop the record is heightened in instances where the claimant alleges that he or she suffers from a mental illness." *Morales v. Berryhill*, No. 14-CV-2803 (KMK)(LMS), 2018 WL 679566, *16 (S.D.N.Y. Jan. 8, 2018) (failure to obtain treatment records, including biweekly therapy sessions and monthly medication management meetings, created obvious gap in the record), *report and recommendation adopted by*, 2018 WL 679492 (S.D.N.Y. 2018).

The A.L.J. explicitly indicated the absence of Ms. Murawski's treatment notes under the "Mental Impairments" section in his decision, wherein he stated that "[t]he claimant appears to have treated with a counselor, Lisa Murawski, but the Exhibit File contains no treatment notes from the sessions." (R. 22.) It was the A.L.J.'s duty to request Ms. Murawski's treatment notes, especially given that Ms. Murawski provided mental health treatment to Plaintiff for almost two years.

Not only did the A.L.J. fail to fulfill his duty to develop the record, he discounted both Ms. Murawski's 2015 statement, as well as the 2017 mental health assessment, based upon the lack of treatment records, which is clear error. "An ALJ may not draw any adverse inference against a claimant because of the absence of treatment notes in the administrative record." *Grabowski v. Colvin*, No. 16-CV-6513P, 2017 WL 4296274, at *16 (W.D.N.Y. Sept. 28, 2017); *Welch v. Colvin*, No. 14-CV-6715P, 2016 WL 836081, *12 (W.D.N.Y. Mar. 4, 2016) ("[a]lthough not entirely clear, the ALJ's decision suggests that he discounted or did not credit the information in [the therapist's] letter because her treatment notes were not contained in the record ... [;] [this] w[as] not [a] permissible reason[ ] to discount the information supplied by [the therapist], particularly without first contacting [the therapist] or attempting to obtain her treatment records"); *Jones v. Colvin*, No. 6:14-CV-06316 (MAT), 2015 WL 4628972, *5 (W.D.N.Y. Aug. 3, 2015) (A.L.J. improperly drew adverse inference against claimant due to lack of treating physician opinion where the A.L.J. never requested an opinion from the treating physician) (citing *Jermyn v. Colvin*, No. 13-CV-5093 (MKB), 2015 WL 1298997, *20 (E.D.N.Y. Mar. 23, 2015) ("[i]nstead of developing the record, the ALJ reached his RFC conclusion based, in part, on the absence of this information in the record[;] ... the ALJ was not permitted to construe the silence in the record ... as indicating support for his determination as to [p]laintiff's limitations")); *Curtis v. Astrue*, No. 11-CV-786 (GTS/VEB), 2012 WL 6098258, *5 (N.D.N.Y. Oct. 30, 2012), *report and*

*recommendation adopted*, 2012 WL 6098256 (N.D.N.Y. Dec. 7, 2012) (remanding to obtain physician's treatment notes on grounds, among other things, that A.L.J. discounted physician's opinion because it was not supported by clinical findings). *See also Gabrielsen v. Colvin*, No. 12-CV-5694 (KMK)(PED), 2015 WL 4597548, *6 (S.D.N.Y. July 30, 2015), *report and recommendation adopted in part*, 2015 WL 4597548 (S.D.N.Y. July 30, 2015) (despite change in regulations governing duty to re-contact treating physician, "courts in the Second Circuit have concluded, citing [20 C.F.R. §§ 404.1520b(c)(1) and 416.920b(c)], that the ALJ still has an obligation to re-contact the treating physician in some cases") (citing *Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013), and *Ashley v. Comm'r of Soc. Sec.*, No. 5:14-cv-00040, 2014 WL 7409594, *4 (N.D.N.Y. Dec. 30, 2014)).

Moreover, if the A.L.J. had requested and obtained the missing records, those treatment notes might have altered the weight the A.L.J. assigned to Ms. Murawski's 2015 statement and 2017 mental health assessment. *See, e.g., Bantle v. Colvin*, No. 15-CV-6497P, 2017 WL 726874, *9 (W.D.N.Y. Feb. 24, 2017) ("[a]lthough it is unclear whether review of [mental health therapist's] notes would have persuaded the A.L.J. to give greater weight to [his] opinion, the notes would have eliminated the stated basis on which the ALJ discounted [his] opinion—that the opinion could not be credited in the absence of the notes"). Rather than assigning them "little weight" because they were unsupported by treatment records, the A.L.J. might have assigned them

greater weight, which could have had a significant impact on the Plaintiff's RFC given that both Mr. Murawski's 2015 statement and 2017 mental health assessment documented mental health issues that may have resulted in significant functional impairments in terms of Plaintiff's ability to work. (R. 329-30; 421-27.) In light of the foregoing, the RFC could not have been based upon substantial evidence.

The Court is not persuaded by the Commissioner's argument that the A.L.J. did not have an obligation to seek Ms. Murawski's treatment notes because Plaintiff's counsel represented at the hearing that "the record was complete." (Comm'r Mem. of Law at 18.) This is simply not accurate. The A.L.J.'s duty to develop the record remained intact even though Plaintiff's counsel indicated that the record was complete. *Grabowski*, 2017 WL 4296274, at \*15 (finding that the A.L.J. was required "to do more to attempt to obtain the missing records than rely on Plaintiff's representative."); *Sotososa v. Colvin*, No. 15-CV-854-FPG, 2016 WL 6517788, \*4 (W.D.N.Y. Nov. 3, 2016) (remanding case where record did not contain notes of claimant's biweekly mental health treatment with provider over one-year period; "this [c]ourt concludes that the ALJ did not satisfy his duty to develop the record even though he advised [claimant's] counsel to obtain the missing [mental health] treatment notes [where] [t]here is no evidence that the ALJ followed up with [claimant's] counsel or attempted to obtain the missing records himself"); *Ayer v. Astrue*, No. 2:11-CV-83, 2012 WL 381784, \*6 (D. Vt. Feb. 6, 2012) ("[t]he

ALJ's failure to make an effort to obtain [medical] opinions [absent from the record], beyond holding the record open for the submission of "medical records" for thirty days after the hearing, is cause for remand"); *Curtis*, 2012 WL 6098258 at *5 (concluding that the A.L.J. had a duty to attempt to obtain treatment notes from physician, despite leaving the record open and counsel's assurance that such records would be submitted, because physician had "extended and regular treating relationship" with claimant and physician's opinion of claimant's limitations "was significantly at odds with the ALJ's [RFC determination]"); *Newsome v. Astrue*, 817 F. Supp. 2d 111, 137 (E.D.N.Y. 2011) ("the fact that the ALJ requested additional information from the [p]laintiff's attorney and did not receive that information does not relieve the ALJ of his duty to fully develop the record"). The A.L.J.'s failure to attempt to obtain Ms. Murawski's treatment notes is cause for remand.

In addition, the Commissioner's argument that the A.L.J. could not have requested Ms. Murawski's treatment notes because the "SSA maintains that the agency does not need the psychotherapy notes themselves to make a determination" is not persuasive in this case. (Comm'r Mem. of Law at 17–18.) The A.L.J. had the authority to and should have subpoenaed the psychotherapy notes here as he relied on their absence to discount Ms. Murawski's 2015 statement and 2017 mental health assessment, which, if assigned more weight, could have impacted Plaintiff's RFC. *Thornton v. Comm'r of Soc. Sec.*, No. 18-CV-0718MWP, 2020 WL 622889, at *4 (W.D.N.Y.

Feb. 11, 2020) (the Court encouraged the A.L.J. to consider whether to obtain psychotherapy or "session notes," by subpoena if needed, to aid the A.L.J. in considering certain mental health issues on remand); *Jennifer W.*, 2020 WL 549357, at *11 ("The ALJ had the authority to subpoena the psychotherapy notes, but her "failure to do so precluded [her] from relying on any purported inconsistencies as a basis" for affording Ms. Parker's opinions lesser weight. The fact that the ALJ repeatedly mentioned the absence of psychotherapy notes suggests that this error pervaded the ALJ's analysis.") (citations omitted); *Tammy H. v. Comm'r of Soc. Sec.*, No. 5:18-CV-851 (ATB), 2019 WL 4142639, *11 (N.D.N.Y. Aug. 30, 2019) ("in light of the substantial lack of treatment notes ..., and the fact that the ALJ's disability determination relied heavily on plaintiff's mental limitations, the ALJ should have made every reasonable effort to fully develop the record[,] ... including by subpoena if necessary, to collect the missing therapy notes") (internal quotations omitted); *Gardner v. Colvin*, No. 16-CV-2385 (JFB), 2019 WL 3753797, *17 (E.D.N.Y. Aug. 8, 2019) (remanding where A.L.J. did not attempt to obtain plaintiff's psychotherapy notes); *Harris ex rel. N.L.K. v. Berryhill*, 293 F. Supp. 3d 365, 369 (W.D.N.Y. 2018) ("[t]he fact that the essential treatment records were requested, but not received, does not obviate the ALJ's independent duty to develop the record, particularly since the ALJ could have exercised his power to subpoena them") (internal quotations omitted).

Finally, the Commissioner asserts that rather than providing psychotherapy notes "another option is for the mental health care professional to prepare a special report detailing the critical current and longitudinal aspects of their patient's treatment and their functional status." (Comm'r Mem. of Law at 18.) However, it is not clear to the Court whether Ms. Murawski purposefully chose to provide a report and not send the psychotherapy records or whether the records were omitted for some other reason, such as by oversight. Indeed, neither Ms. Murawski's 2015 statement (R. 23) nor her 2017 mental health assessment (R. 425) indicates that Ms. Murawski chose to provide a "special report" rather than provide psychotherapy records related to Plaintiff.

## CONCLUSION

For the reasons stated above, the Court grants Plaintiff's motion for judgment on the pleadings (ECF No. 7) and denies the Commissioner's motion for judgment on the pleadings (ECF No. 9). The case is remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g) for a hearing. The Clerk of the Court will enter judgment in favor of Plaintiff and close this case.

**IT IS SO ORDERED.**

DATED: September 21, 2020
        Rochester, New York

MARK W. PEDERSEN
United States Magistrate Judge